IN THE CIRCUIT COURT OF NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

Ahmad Khanjahanbakhsh et al.
    Plaintiff(s),

v.                                  Case No.:

Wells Fargo Bank, N.A., Et al.
    Defendant(s).
_____/

## COMPLAINT

The Plaintiff(s), Ahmad Khanjahanbakhsh (hereinafter "**DEBTOR**"), Buyer, and parties facilitating Transaction, by and through the undersigned counsel, hereby files this Complaint against the said Defendants, *infra*. Wells Fargo Bank, N.A., formerly known as (fka) Wachovia Mortgage FSB, fka World Savings Bank FSB, its affiliates, and agents shall hereinafter be referred to as "Judgment Creditor" or "Creditor" or "Wells Fargo", and states the following.

**Background & Factual allegations**

1. Background & Factual allegations commence with the following with any complaint exhibits.

2. This Action is NOT whether a debt is owed or not. This Action is about improper acts committed by Defendant(s) in relation to collecting a Debt, including improper acts in collecting debt AFTER judgment of foreclosure; hence this claim is NOT a compulsory claim in any other lawsuit. The action relates to collection of debt secured by real property (herein after referred to as the "PROPERTY") known as 406 Lillian Drive – Orlando FL 32806 & the related Orange County Florida Court Case 2009-CA-038474-O: Wachovia Mortgage FSB vs. Amhad Khanjahanbakhsh, et al..

Pertinent note, allonge, mortgage, assignments, letters, and other documents are referenced from the filings in the Court Record of 2009-CA-038474-O.

3. Natural person Plaintiffs are over the age of 18 years. KHANJAHANBAKHSH is a resident of Orange County Florida. Parties facilitating Transaction have reside and/or do business in Orange County.

4. WELLS FARGO is a foreign entity conducting business in this county, throughout the state of Florida and the United States.

5. This complaint seeks relief damages in an amount up to $15,000.00 dollars, exclusive of interest, costs, and attorneys' fees.

6. Venue is proper pursuant to Florida Statutes, *inter alia* § 47.011.

7. Defendant, WELLS FARGO, also does business as WELLS FARGO HOME MORTGAGE.

8. WELLS FARGO has acted as a loan servicer.

9. KHANJAHANBAKHSH/DEBTOR anticipates possibly adding defendants (such as INVESTORS/OWNERS OF NOTE, HOLDERS OF NOTE, & OTHER SERVICERS), as more information becomes known to KHANJAHANBAKHSH.

10. The pertinent debt commenced about May 2007 with a note indicating Lender is **World Savings Bank, FSB**, its successors and/or assignees, hereinafter "WORLD". World Saving Bank, FSB became a Wachovia Mortgage, FSB, hereinafter "WACHOVIA" and then became and is now known as Wells Fargo Bank, N.A., hereinafter "WELLS FARGO".

11. WACHOVIA had alleged the aforementioned related foreclosure action that a payment became due which a default was based upon, about October 13, 2008

according to pertinent aforementioned Complaint. About 12-9-2009 the Orange County Clerk docket shows the initial complaint of the aforementioned foreclosure action filed and alleged fulfilling all condition precedents in initiating action and included a claim to enforce a lost note. Judgment was rendered about 9-16-2013 giving Plaintiff right to execute enforcement of Judgment by Foreclosure Auction Sale. Several events occurred (including Bankruptcy proceedings & an unfair collection lawsuit initiated by debtor and settled by the parties) resulting in no Foreclosure Auction Sale occurring up to the filing of this complaint.

**MOST RECENT LOSS MITIGATION**

*12.* **About 3-20-2017, an agreed order to cancel sale was rendered. This agreed order was part of settlement of an unfair collection lawsuit initiated by debtor with Orange County Case No. 2017-CA-000221-O. Settlement included the cancellation of Foreclosure Auction Sale that was scheduled was March 20, 2017 to allow further mitigation (short sale)processing.**

*13.* **Since the end of March, 2017 Debtor has submitted and had follow up on Debtor mitigation request for short sale.**

*14.* About 4-10-2017 JUDGMENT CREDITOR filed motion to Reschedule Sale.

*15.* About 6-20-2017 Judgment Creditor scheduled hearing and requested the court to set a sale date. The Sale is set for 8-21-2017.

*16.* About July 7, 2017, DEBTOR was informed by CREDITOR representative that CREDITOR had stopped processing DEBTORS request short sale, and instead started processing a DEBTOR for MODIFICATION.

*17.* Since July 7, 2017, DEBTOR did eventually get assigned a CREDITOR representative that has corrected the mitigation processing for SHORT SALE.

*18.* **DEBTOR also is grateful and appreciative of the CREDITOR reps that have rectified the error.**

*19.* NOTWITHSTANDING CREDITOR rectifying processing error, DEBTOR believes CREDITOR has technically violated its duties and has engaged in technical unfair collection actions. Due to the error in switching mitigation processing from Short Sale to Modification then back to Short Sale again; the last short sale processing initiation may NOT have started more than 37- 40 days before scheduled 8-21-2017 sale date; which would be unfair to proceed to short sale because the processing of the short sale was improper handled (though likely unintentionally) by the Creditor.

VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing and to the best of my knowledge, the facts stated wherein are true

_____
Ahmad Khanjahanbakhsh

-----------------------------

REGULATION RELATED TO HELPING HOMEOWNERS

*20.* EmergencyEconomic Stabilization Act of 2008 (PUBLIC LAW 110-343—OCT. 3, 2008 - 122 STAT. 3765 ) indicated that Secretary of the Treasury "shall implement a

Scanned by CamScanner

plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer" [12 USC 5219 - SEC. 109. FORECLOSURE MITIGATION EFFORTS. (a) RESIDENTIAL MORTGAGE LOAN SERVICING STANDARDS]; as of this filing, available at:

https://www.congress.gov/110/plaws/publ343/PLAW-110publ343.pdf

21. Pursuant to Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), §201, the HAMP guidelines are, as a matter of law, the industry standard for the residential mortgage servicing industry:

STANDARD INDUSTRY PRACTICE.—The qualified loss mitigation plan guidelines [i.e., HAMP] issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice for purposes of all Federal and State laws.

22. HAMP directives were further addressed and incorporated into to the Dodd-Frank Wall Street Reform and Consumer Protection Act, herein "Dodd-Frank Act". The Dodd-Frank act further empowered the Consumer Financial Protection Bureau to regulate pertinent activities.

23. Moreover, the governmental agency, Consumer Financial Protection Bureau "herein CFPB"; regulates mitigation processing. Particularly, 12 C.F.R. §1024.41 (§1024.41 Loss mitigation procedures) applies and indicates:

(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a

> servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.
> 
> [Emphasis Added.]

----------------------

24. WELLS FARGO participated in mortgage mitigation processes.

25. WELLS FARGO had a duty to participate in mortgage mitigation processes.

26. KHANJAHANBAKHSH submitted to the mitigation processes (Modification) since 2009.

27. WELLS FARGO improperly performed the mitigation process.

28. WELLS FARGO improperly performed the mitigation process.

29. KHANJAHANBAKHSH and Realty agent had respective participation in part in the mitigation process. See attestations to be filed.

30. Above Paragraphs shall be referred to as "Background & Factual allegations".

## COUNT I – NEGLIGENCE

*31.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*32.* At all material times, each DEFENDANT owed a duty to exercise reasonable care in the processing of mitigation plans/options.

*33.* Pursuant to, *inter alia*, aforementioned guidelines, a homeowner may not be foreclosed on while being evaluated for a loan modification.

*34.* Moreover a foreclosure must be cancelled if a homeowner has applied for a mitigation/modification.

*35.* At all material times, each DEFENDANT owed a duty to exercise reasonable care in the processing of mitigation plans/options.

*36.* Each DEFENDANT (investor, servicer, principal, OR agent thereof) breached the duty of care by DEVIATING from aforementioned STANDARD INDUSTRY PRACTICE.

*37.* WELLS FARGO breached the duty of care by DEVIATING from the aforementioned mitigation plan.

*38.* WELLS FARGO breached the duty of care by frustrating aforementioned mitigation plan/option by misrepresenting the status of the mitigation process. For example, misrepresenting whether documents were received by the DEFENDANT.

*39.* WELLS FARGO breached the duty of care in short sale mitigation processing was not done reasonalby modification agreement was not continued.

*40.* WELLS FARGO may have further breached the duty of care with other acts to be determined through discovery.

*41.* As a direct, foreseeable, and proximate result of each DEFENDANT's negligence, Plaintiff has suffered damages.

*42.* While Plaintiff has suffered statutory and nominal damages, another material damage, as part of the last element of damage in alleging negligence occurs with a CERTIFICATE OF SALE AND subsequent CERTIFICATE OF TITLE.

*43.* As a further direct and proximate result of each DEFENDANT's negligence Plaintiff has incurred damages and will continue to incur additional damages in the future. Damages, include but not limited to: damages emanating litigation and mitigation processing, damages emanating from continued diminished credit scores, and damages emanating from time lost.

*44.* WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested *infra*.

## COUNT II – NEGLIGENT TRAINING

*45.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*46.* WELLS FARGO has a duty of care to train a SERVICER/AGENT.

*47.* For each act of negligence in COUNT I committed by a SERVICER or AGENT, there is a breach of the duty of the PRINCIPAL to reasonably train such SERVICER or AGENT.

*48.* As a direct, foreseeable, and proximate result of the negligent training of a SERVICER or AGENT, Plaintiff has suffered damages.

*49.* While Plaintiff has as suffered statutory and nominal damages, another material damage, as part of the last element of damage in alleging negligence occurs with a CERTIFICATE OF SALE AND subsequent CERTIFICATE OF TITLE

*50.* As a further direct and proximate result of the negligent training of a SERVICER or AGENT, Plaintiff has incurred expenses for mitigation processing, and will continue to incur additional expenses in the future.

*51.* WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested *infra*.

## COUNT III – NEGLIGENT SUPERVISION

*52.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*53.* WELLS FARGO has a duty of care to supervise the acts of a SERVICER/AGENT.

*54.* For each act of negligence in COUNT I committed by a SERVICER or AGENT, there is a breach of the duty of the PRINCIPAL to reasonably supervise such SERVICER or AGENT.

*55.* As a direct, foreseeable, and proximate result of the negligent supervision of a SERVICER or AGENT, Plaintiff has suffered damages.

*56.* While Plaintiff has as suffered statutory and nominal damages, another material damage, as part of the last element of damage in alleging negligence occurs with a CERTIFICATE OF SALE AND subsequent CERTIFICATE OF TITLE

57. As a further direct and proximate result of the negligent supervision of a SERVICER or AGENT, Plaintiff has incurred expenses for mitigation processing, and will continue to incur additional expenses in the future.

58. WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested *infra*.

## COUNT III – TORTIOUS INTERFERENCE OF ADVANTAGEOUS RELATIONSHIP BETWEEN PLAINTIFF AND UNKNOWN INVESTOR (KHANJAHANBAKHSH AND UNKNOWN INVESTOR/BENEFICIAL OWNER) [OF PROCEEDS OF NOTE AND MORTGAGE LIKE A CMO (collateralized mortgage obligation) OR MBS (mortgage backed securities)]

59. Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

60. Plaintiff and UNKNOWN BENEFICIAL OWNER/INVESTOR has a debtor/creditor relationship. [Like an investment TRUST with collateralized mortgage obligations and/or MBS (mortgage backed securities). [Fannie Mae and Freddie Mac do NOT seem to have this obligation in their loan look up web portal].

61. INVESTOR stands to gain with amounts of value emanating from interest, fee(s), and/or from the sale of underlying collateral. Plaintiff stands to benefit from value provided by creditor.

62. Each WELLS FARGO Servicer and/or Agent (WELLS FARGO agents) has a fiduciary duty of care to each pertinent Principal.

63. Each WELLS FARGO Servicer and/or Agent who committed an act of negligence (pursuant to Count I) interfered with the debtor/creditor relationship of the Plaintiff and pertinent Principal.

*64.*  Plaintiff and each Investor is damaged due to the interference of pertinent Defendant Servicer and/or Agent.

*65.*  Plaintiff is damaged by incurred expenses for mitigation processing, and will continue to incur additional expenses in the future.

*66.*  WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested *infra*.

**REMEDIES DEMANDED FOR NEGLIENCE AND TORTIOUS INTERFERENCE**

*67.*  Plaintiff reserves to demand exemplary or punitive damages are available where it can be shown that the WELLS FARGO acted with malice or criminal indifference.

*68.*  REMEDIES DEMANDED by Plaintiff is judgment to each WELLS FARGO for:

a.  Compensatory damages (damages for the detriment suffered as a result of the WELLS FARG O's negligent conduct - *Tiara Condominium Assoc. v. Marsh & McClennan Co., Inc.*, No. SC10-1022 (Fla. 2013));

b.  Lost earnings (any wages lost because of the WELLS FARGO's negligent conduct causing continuing blemished credit rating. The amount of lost earnings to be awarded to the plaintiff is based upon the plaintiff's possible future earnings, not past income);

c.  Lost profits (based on Plaintiff credit rating continuing to be blemished, any reasonable expectation of earning profits based upon prior earnings);

d.  Injury to personal property (damage and the loss of use of personal property/credit rating);

e.  Nominal damages (no damages or where recoverable damages were not proven, *Stevens v. Cricket Club Condominium, Inc.*, 784 So. 2d 517 (Fla. 3rd DCA 2001));

h.  Loss of consortium: Recoverable by spouse of the plaintiff for loss of the love and affection of a spouse.

i.  as well as post-judgment interest and the costs and expenses of bringing this action as allowed by law, and any other relief this Honorable Court deems just and proper.

## COUNT VI – VIOLATION OF RESPA

69. Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

70. Mortgage Servicing Rules found under the Real Estate Settlement Procedures Act (Regulation X), 12 U.S.C. §2605, et seq. and the Consumer Financial Protection Bureau can regulate pursuant to Dodd-Frank Act.

71. Enacted as consumer protection statute, RESPA provides a mechanism for regulating the real estate settlement process, placing requirements on entities or persons responsible for servicing federally related mortgage loans. *McClean v. GMAC Mortg. Corp.*, 398 F.App'x 467, 471 (11th Cir. 2010) (per curiam) (noting that RESPA is a consumer protection statute that is to be construed liberally to best serve Congress' intent).

72. Moreover, the governmental agency, Consumer Financial Protection Bureau "herein CFPB"; regulates mitigation processing. Particularly, 12 C.F.R. §1024.41 (§1024.41 Loss mitigation procedures) applies and indicates:

(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a

foreclosure sale, a servicer **shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale,** unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.

[Emphasis Added.]

---

### COUNT VIII – VIOLATION OF FCCPA

73. Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

74. Florida Statute Sections 559.55 - 559.785 may be cited as the "Florida Consumer Collection Practices Act", herein "FCCPA".

75. Florida Statute Section 559.72 states in pertinent part:

Prohibited practices generally.—In collecting consumer debts, no person shall

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

76. Fla.Stat. § 516.31 states in pertinent part:

Consumer protection; certain negotiable instruments restricted; assigns subject to defenses; limitation on deficiency claims; cross collateral.—

(1) SCOPE.—This section applies to every consumer finance loan or other contract authorized by this chapter in which any form of credit is extended to an individual to purchase or obtain goods or services for use primarily for personal, family, or household purposes.

(2) RESTRICTION ON CERTAIN NEGOTIABLE INSTRUMENTS AND INSTALLMENT CONTRACTS.—A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase of certain consumer goods or services is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when the claim or defense is asserted against the person.

77. Fla.Stat. § 559.77(2) provides for statutory damages of $1,000.00 for each violation.

78. Particularly, each improper processing action which was untimely is a technical violation; and contributed to the submission of most recent short sale package nearer the time of scheduled foreclosure auction; causing prejudice to DEBTOR by causing the appearance of untimely requests for sale cancellation. Instead, should the creditor done its duty to process debtor's request for mitigation, CREDITOR would not have basis to proceed to facilitate Foreclosure Auction Date. Should the CREDITOR continue to do the necessary items to move the Foreclosure Auction Sale forward (like filing a notice of publication of sale), DEBTOR alleges CREDITOR is asserting the existence of some other legal right (right to Foreclosure Auctionn Sale) when such (CREDITOR SHOULD KNOW) that the right should not exist (if not for CREDITOR improper processing).

79. Plaintiff incorporates the allegations in the counts of negligence, negligent training, negligent supervision, negligent misrepresentation, and tortious interference.

80. Plaintiff also declares counts of violation of FDCPA, RESPA, & TILA as violations of FCCPA.

81. As a result of each Defendant violation(s), Plaintiff has suffered statutory damages and cost of lawsuit.

*82.* WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.

### COUNT IX – VIOLATION OF FDCPA

*83.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*84.* Plaintiff alleges the following violations of Federal Debt Collection Practices Act ("FDCPA") in pertinent part.

15 USC § 1692e - False or misleading representations

> A debt collector may not use any false, **deceptive, or misleading** representation or **means in connection with the collection** of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 USC § 1692j - Furnishing certain deceptive forms

> (a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

> 15 USC § 1692f - Unfair practices - A debt collector **may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing**, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

85. The Federal Debt Collection Practices Act ("FDCPA")indicates that a loan servicer could be deemed a "debt collector" under the FDCPA where it attempted to both enforce a security interest and collect a debt – *Birster v. American Home Mortgage Servicing, Inc.*, No. 11-13574 (11th Cir. July 18, 2012) (reversing and remanding).

86. Any false, deceptive, or misleading representation or means in connection with the collection of any debt, is a violation of the FDCPA. Even, a false representation in connection with the collection of a debt is sufficient to violate the FDCPA facially, even where no misleading or deception is claimed. *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012).

87. TILA indicates that creditor and assignee (as defined under 15 USC §§ 1602(g), 1641) may be held vicariously liable for original lender's failure to properly respond to borrower's request for information under 12 C.F.R. § 226.36 – *Cenat v. U.S. Bank, N.A.*, No. 12-80663-CIV (S.D.Fla. March 19, 2013) (denying defendant's motion to dismiss).

88. Particularly, each improper processing action which was untimely is a technical violation; and contributed to the submission of most recent short sale package nearer the time of scheduled foreclosure auction; causing prejudice to DEBTOR by causing the appearance of untimely requests for sale cancellation. Instead, should the creditor done its duty to process debtor's request for mitigation, CREDITOR would not have

basis to proceed to facilitate Foreclosure Auction Date. Should the CREDITOR continue to do the necessary items to move the Foreclosure Auction Sale forward (like filing a notice of publication of sale), DEBTOR alleges CREDITOR is asserting the existence of some other legal right (right to Foreclosure Auctionn Sale) when such (CREDITOR SHOULD KNOW) that the right should not exist (if not for CREDITOR improper processing).

89. Statutory damages of $1000.00 for each violation is provided by 15 U.S.C. § 1692k(a)(2).

90. Reasonable attorney fees and costs are provided by 15 U.S.C. § 1692k(a)(3).

91. Plaintiff alleges the instances of non-disclosure or late disclosure by pertinent Creditor(s) are/is a pattern or practice of non-compliance with relevant requirements.

92. Plaintiff incorporates the allegations in the counts of negligence, negligent training, negligent supervision, negligent misrepresentation, and tortious interference as violations of FDCPA.

93. While Plaintiff has as suffered statutory and nominal damages, another material damage, as part of the last element of damage in alleging negligence occurs with a CERTIFICATE OF SALE AND subsequent CERTIFICATE OF TITLE.

94. Plaintiff also declares counts of violation of RESPA & TILA as violations of FCCPA.

95. As a result of each Defendant violation(s), Plaintiff has suffered statutory damages and cost of lawsuit.

96. **WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.**

## COUNT X – VIOLATION OF FDUPTA

*97.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*98.* The Florida Deceptive and Unfair Trade Practices Act, herein after "FDUPTA", states:

501.202 Purposes; rules of construction.—The provisions of this part shall be construed liberally to promote the following policies: (1) To simplify, clarify, and modernize the law governing **consumer protection**, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices; (2) **To protect the consuming public** and legitimate business enterprises **from those who engage in unfair methods** of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.(3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

501.203 (3) "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2006:(a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.; (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

501.204 Unlawful acts and practices.—(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.(2) It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006.

*99.* Particularly, each improper processing action which was untimely is a technical violation; and contributed to the submission of most recent short sale package nearer the time of scheduled foreclosure auction; causing prejudice to DEBTOR by causing the appearance of untimely requests for sale cancellation. Instead, should the creditor done its duty to process debtor's request for mitigation, CREDITOR would not have basis to proceed to facilitate Foreclosure Auction Date. Should the CREDITOR

continue to do the necessary items to move the Foreclosure Auction Sale forward (like filing a notice of publication of sale), DEBTOR alleges CREDITOR is asserting the existence of some other legal right (right to Foreclosure Auctionn Sale) when such (CREDITOR SHOULD KNOW) that the right should not exist (if not for CREDITOR improper processing).

*100.* Plaintiff incorporates the allegations in the counts of neglience, negligent training, negligent supervision, negligent misrepresentation, and tortious interference.

*101.* Plaintiff also declares counts of violation of FCCPA, FDCPA, RESPA, & TILA as violations of FDUPTA.

*102.* As a result of each Defendant violation(s), Plaintiff has suffered statutory damages and cost of lawsuit.

*103.* WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

*104.* Plaintiff demands a trial by jury of all issues so triable.


Respectively submitted:

A.I.M. Law P.A. ---- AIM - PO Box 568163 - Orlando FL 32856

AIM Aty Lim cell 407-925-4858 (no voicemail but text capable)- Direct 407-279-1246

(voicemail capable) – AIM Ph-904-515-2976 - AIM Primary Email: mailclerk.firm@gmail.com

AIM Primary Email: mailclerk.firm@gmail.com - Scheduling: Firm.Assistants@gmail.com

Counsel for Plaintiff

<u>/s/Chris Lim</u>

For the Firm: AIM - Chris Lim - FBN 13006 - chris.lim.law@gmail.com